[L. A. No. 9180.   Department One.—July 14, 1928.]

ALFRED L. BLACK, as Executor, etc., Respondent, **v.** MABEL V. MEYER, as Executrix, etc., Appellant.

Hahn & Hahn and O'Melveny, Millikin, Tuller & Mac-Neil and O'Melveny, Tuller & Myers for Appellant.

W. I. Gilbert and Frank P. Doherty for Respondent.

PRESTON, J.—This suit was commenced by C. W. Dorris. He subsequently died, and defendant's appeal is therefore

prosecuted against his executor. The action is one to recover upon a creditor's claim filed against the estate of Henry D. Meyer, deceased, based upon an alleged promissory note dated November 26, 1923, executed by decedent to said C. W. Dorris, payable six months after date, in the principal sum of $25,000, with interest thereon at seven per cent per annum.

The peculiar facts of the case are that no note was produced nor was any direct evidence of its execution offered. In the creditor's claim, which contains only what purports to be a true copy of said note, it is stated, as was likewise asserted upon the trial, that the original thereof was totally destroyed with the exception of a fragment found upon the dead body of the alleged maker, upon which appears a signature and a small portion of the printing, as follows: "this note or any portion thereof I promise ourt may adjudge reasonable as Attorney's fees in said suit Henry D. Meyer (signed).''

Section 1880, subdivision 3, of the Code of Civil Procedure provides that a party to an action against an executor upon a claim against the estate of a deceased person cannot be a witness as to any matter or fact occurring before the death of such deceased person. By reason of the prohibition of this section such testimony of plaintiff, C. W. Dorris, as was admitted over the objection of defendant was extremely limited. The court did permit him, however, to identify the fragment as having been torn from a document, of which the note set forth in the claim was a copy, and that he last saw it in the outer coat pocket of said Henry Meyer, deceased.

The substance of the testimony of other witnesses was that Dorris and Meyer had had certain business relations and in the year prior to Meyer's death had endeavored to make some settlement of their affairs; that during said period Dorris had been seen in possession of a $25,000 note apparently executed by Meyer, which he exhibited on several occasions and even had copied; that Meyer had likewise mentioned to various people a $25,000 note held by Dorris, but he had emphatically declared more than once that he would never pay it. Handwriting experts testified for both parties, differing materially in their opinion as to the age of the paper, although the signature was positively

identified as that of Meyer. Police Detective Moseley testified to having removed said fragment from the body of Mr. Meyer after his death—from his pocket on the outside of his coat.

The court found, among other things, that said note was executed and delivered to Dorris for a valuable consideration; that the original thereof was not voluntarily, intentionally, or maliciously destroyed, but remained a legal and binding obligation and valid claim against the estate of said Meyer, and that no part thereof had been paid. Judgment was accordingly entered in favor of plaintiff for $27,154.15, being the principal sum of said note, with interest, less a small offset.

The appeal is based primarily upon the ground of insufficiency of the evidence to support the findings, especially in view of the undisputed fact that the fragment of paper was in possession of Meyer and found upon his body. Appellant also complains of prejudicial error committed by the court in permitting plaintiff Dorris to testify to matters and facts which occurred prior to the death of Meyer, in violation of said section 1880, subdivision 3, of the Code of Civil Procedure.

As to the latter contention the record shows plainly that in the examination of plaintiff both court and counsel were careful in their efforts to limit the questions and replies to matters not within the inhibition of said section. Whether it was proper to permit identification through his testimony of the note set forth in the claim as that copied by Miss Tompkins prior to the death, the original of which was destroyed, is doubtful. As said in *In re Kitchen*, 192 Cal. 384, 391 [30 A. L. R. 1008, 220 Pac. 301, 303], the purpose of the rule declared in said section is "to prevent a claimant from mulcting an estate by proving by claimant's own testimony that which the decedent might perhaps disprove were his lips not sealed by death. Its declared purpose is to protect the estate from possible fraud, perjury and injustice." Determination of this question, however, becomes unnecessary, as the other grounds urged require a reversal of the judgment.

██ Bearing in mind and giving full weight to all testimony indicating that, at a time not long before the death of said Meyer, Dorris did in fact hold his note for $25,000,

we are confronted with this situation: There was offered no evidence whatsoever, except the testimony of Dorris himself, identifying the fragment as a portion of the instrument set forth in the claim; there was offered no direct evidence of execution of the note. There was no actual proof of any indebtedness of Meyer to Dorris. There was offered no evidence directly connecting the instrument copied prior to the death with the alleged document destroyed prior thereto and said document with the fragment of paper. There was no proof that the note had not been canceled. There was no proof that it had not been paid. There was no explanation of its undisputed possession by the maker. There was no explanation of the fact that the signature had been torn from the body of the note, if such was the fact. There was no proof that the alleged document had not been destroyed voluntarily, wilfully, or intentionally, or for purposes of cancellation. In short, the record contains not one word of evidence to support the findings that said note was executed, that it was delivered for a valuable consideration, that it was not intentionally destroyed, and that it was uncanceled and unpaid.

The very fact that said alleged note, or the signature thereto, was in the possession of the maker before his death and was found upon his dead body, gives rise to certain disputable presumptions as to payment and cancellation, which are binding upon the court when, as here, they are uncontroverted by other evidence (sec. 1961, Code Civ. Proc.), to wit: "That an obligation delivered up to the debtor has been paid" (subd. 9); "That a person in possession of an order on himself for the payment of money . . . has paid the money . . . " (subd. 13); "That the ordinary course of business has been followed" (subd. 20, sec. 1963, Code Civ. Proc.).

*Light* v. *Stevens*, 159 Cal. 288 [113 Pac. 659], is an exact converse of the case at bar. There as here the lips of one of the parties to the transaction were closed by death and those of the other party by law, so evidence on the question of payment of the note was somewhat unsatisfactory. The court held that just as an obligation delivered up to the debtor is presumed to have been paid, so the converse of this, that possession by the payee is *prima facie* evidence of nonpayment, is universally held, further saying: " . . .

it would be quite a departure from 'the ordinary course of business' which is presumed to have been followed (Code Civ. Proc., sec. 1963, subd. 20), to pay the full amount due on a note without receiving the note from the payee, or, if it cannot be delivered, some other evidence of payment (*Griffith* v. *Lewin,* 125 Cal. 618 [58 Pac. 205])." The converse of the latter statement is likewise true and here directly applicable. It would surely be quite a departure from the ordinary course of business to surrender possession of an unpaid note and permit the signature thereto to remain in the hands of the maker.

The case of *Turner* v. *Turner,* 79 Cal. 565 [21 Pac. 959], is also directly in point. The notes there involved were made by one J. T. Turner to his brother, whose administrator was plaintiff in the action. Both brothers were dead before the suit was commenced. There was no direct evidence for or against the payment. Plaintiff did not produce the notes at the trial or give any satisfactory explanation of their absence; the last seen of them was that they were in possession of the maker. The court said: "The possession of the notes is a material circumstance in relation to the question of payment. Possession by the maker raises a rebuttable presumption of payment. (Code Civ. Proc., sec. 1963, subd. 9; Greenleaf on Evidence, sec. 527; *Zeigler* v. *Gray,* 12 Serg. & R. (Pa.) 42; *Lipscomb* v. *DeLemos,* 68 Ala. 592; *Carroll* v. *Bowie,* 7 Gill (Md.), 41.) . . . And upon this principle it has been held in this state that if payment is denied the *onus* is upon the plaintiff to prove the non-payment at least by the production of the note. (*Farmers' Bank* v. *Christensen,* 51 Cal. 572.) In other words, if the plaintiff does not produce the note or account for its absence, the presumption is against him."

Thus even if the competency of plaintiff's testimony, the indebtedness of Meyer to Dorris and execution and delivery of the note of which said fragment was a portion, were conceded, there would still remain the unexplained and decisive fact that the undestroyed portion of the alleged obligation was admittedly found in possession of the maker. This would indicate that said obligation had been met, the note returned to the maker and that, for the purpose of canceling it in accordance with his custom as shown by the evidence, he tore off the signature thereto. Section

3204 of the Civil Code provides that " . . . where an instrument or any signature thereon appears to have been canceled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake or without authority." Here not only did plaintiff fail to meet the burden of proof resting upon him, but he utterly failed to offer any proof controverting said appearance of cancellation.

The judgment is reversed.

Curtis, J., and Seawell, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.