# Richmond.

## WELLS' ADM'R v. AYERS ET ALS.

### JANUARY 19th, 1888.

Absent, Lewis, P.

1. EVIDENCE—*Books—Payments.*—Book containing entries in defendant's handwriting, of payments by him to payee in her lifetime, on note in action, is not admissible as evidence in defendant's favor.
2. WITNESSES—*Competency.*—Payee being dead, maker is not competent to testify in his own favor in action on the note, no person having an interest adverse to maker's having previously testified to some fact occurring before payee's death. Acts 1876-7, ch. 256, p. 265.
3. EVIDENCE—*Proof of payment—Presumption—Case at bar.*—Decedent had held two notes—one made by all the defendants—the other by one of them, A. Former note was in suit. The latter was in hands of A. There was proof of a payment to decedent by A, partly in money, and partly by his individual check. No such payment was credited on note in suit. The other was not produced:

HELD:
Payment was presumably on A's note.
4. IDEM—*Claim of gift—Proof.*—Evidence here does not support A's pretension that the payment was made on the joint note and that his individual note was delivered up to him as a *gift* by payee during his lifetime.

Error to judgment of corporation court of Danville rendered June 23d, 1885, in an action of debt on a promissory note, wherein Alfred Anderson, administrator with the will annexed, of Nancy Wells, deceased, was plaintiff, and George C. Ayres, D. Ayres, and William Ayres & Son, were defendants. Judgment being for the defendants, the plaintiff brought the case here by a writ of error. Opinion states the case.

*Peatross & Harris, Guy & Gilliam,* and *Christian & Christian,* for the plaintiff in error.

*A. M. Aiken* and *W. W. Henry,* for the defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

The record discloses that the appellant, Alfred Anderson, as administrator, *c. t. a.,* of Nancy Wells, deceased, on the 12th of September, 1884, instituted in the circuit court of Danville, against George C. Ayres and David Ayers, partners as George C. and D. Ayers; and William Ayres, Sr., and the said George C. Ayers, late partners under the firm and style of William Ayers & Son, a suit on a note for $1,596, dated 1st January, 1882, payable on demand, and executed to said Nancy Wells in her lifetime by said George C. and D. Ayers and said William Ayers & Son, and left by her among her papers at her death, which occurred in May, 1884.

At the January term, 1885, of the said court, the said defendants appeared and entered the plea of *nil debet,* and a special plea of payment, in which they set up the payment by them to Nancy Wells in her lifetime of sundry sums of money, aggregating $1,200—all of which said alleged payments were alleged to have been paid to said Nancy Wells, personally, except $100, which was alleged to have been paid to L. C. Wells for her. To these pleas the plaintiff replied generally, and the issue was joined on them, and the jury was sworn to try these issues when the cause came on to be tried at the June term, 1885, of the said court. At the trial, after the plaintiff, to establish his claim, had exhibited the note sued on and therewith rested his case, the defendants offered in evidence, to support their plea of payment, a book in which there was an account of the payments alleged to have been made to Nancy Wells, as claimed in the defendant's plea, in the handwriting

of the defendant, George C. Ayers himself, one of the obligors in the note sued on, who was then present in the court.

To the introduction of this book as evidence, the plaintiff objected; but the court overruled his objection, and admitted the book in evidence, and the plaintiff excepted. This constitutes the first error assigned by appellant. The second error assigned is, that the court overruled the objection of the plaintiff to the admission of George C. Ayers, himself, as a witness in the case, and admitted him to prove that the payments alleged, in the special plea of the defendants, to have been made by him personally to Mrs. Nancy Wells, personally in her lifetime, were so made by him on the note in suit—and not on his individual note held by Mrs. Nancy Wells; and that she had, in her lifetime, donated his said individual note for $1,085 85, with interest from January 1, 1882, to him, and surrendered it to him without requiring him to pay it. To which action of the court the plaintiff excepted. The jury allowed the defendants these alleged payments as credits on the note in suit, thereby reducing the amount of the plaintiff's recovery in the action by $1,000.

The plaintiff moved the court to set the verdict aside, and to award him a new trial, because of the errors of the court in admitting the said book, and the said witness, George C. Ayers, in evidence in the cause; which motion the court overruled and entered up a judgment upon the verdict for a sum less, by $1,000, than the plaintiff claimed in the action on the note in suit. To this refusal of the court to set the verdict aside and grant a new trial, the plaintiff excepted and tendered three bills of exception.

We are of opinion that the circuit court erred in overruling the objection of the plaintiff to the admission of the book of entries of charges of sums alleged in the special plea to have been paid to Mrs. Nancy Wells, the plaintiff in the action, in the handwriting of George C. Ayers, and, in admitting the said book in evidence, to maintain the plea. As to what sort

of books are evidence, and under what circumstances admitted in Virginia, see *Donner & Company* v. *Morrison*, 2 Gratt., 250; *Lewis, executor of Thurston*, v. *Norton*, 1 Washington, 76.

There is no doubt that shop books may be introduced as evidence of *sales* made or of *work* done, &c., under the pressure of certain necessities; but the record of payments on a debt evidenced by a bond or note of the debtor, made by the debtor himself, do not come under this rule. It would open too wide a door to fraud, and be too easy a way to pay a debt, to allow a debtor's own entry of payment, in a memorandum or account made by himself, and embracing no other transaction, to wipe out a debt admitted to have existed and evidenced by his own hand; and there could be no plea of necessity or convenience for it, as in case sales made and work done, where often the creditor is the only party present, and the nature and extent of the account is tested by the course of trade and the probable wants of the debtor. In the case of payments upon a debt, evidenced by the note of the debtor, the debtor is not left to the dependence of his own entries in his own book of account; he could have and no doubt would have receipts, or the cancelled note.

Were Mrs. Wells, the payee, and holder of the note, alive, these entries by G. C. Ayres of his own payments, could not be admitted; still less when she is dead could he thus be allowed to testify in his own behalf against the estate of the payee and holder of his solemn, written, legal obligation. The book ought to have been excluded.

The circuit court erred in overruling the objection of the plaintiff to the competency of G. C. Ayres as a witness, and in admitting him to testify. He was party to the transaction to the utmost extent and in the broadest sense; and Mrs. Wells, the payee in his own note being dead, he was utterly incompetent to testify in his own interest. But it is contended that the witness, L. C. Wells, was a person having an interest adverse to G. C. Ayres and the other defendants, and

had been examined by plaintiffs as a witness, and thereby, under the act of 2nd April, 1877, (Acts of '76–7, chapter 256, p. 265) said Ayres was made competent, and was admissible. The record shows nothing to prove any interest in Wells in the matter, however the suit should result; or to disqualify him as a witness, or to invest him with such a clear and direct interest, adverse to the defendants, as to open the door and let in the payor of a note as a witness against the estate of the payee and holder of his note. The idea of adverse interest in L. C. Wells, is repelled by the fact that he was introduced by the defendants themselves, and the testimony which he gave was brought out on cross-examination by the plaintiff, though adopted as evidence in chief.

It is admitted, and is clearly shown by the record, that Mrs. Nancy Wells, a widow living near Danville, who died in May, 1884, leaving a will, held on the 25th of August, 1882, a note of George C. and D. Ayres, and William Ayres & Son, for $1,633 12, and also the individual note of George C. Ayres for $835 12, both notes bearing interest from January 1st, 1877. On the 25th of August, 1882, L. C. Wells, on behalf of Mrs. Wells, made a settlement with George C. Ayres, in which the interest accrued on both these notes was calculated to January 1st, 1882, making due by George C. Ayres on his individual note $1,085 83, and due by the firm note of G. C. & D. Ayres, and William Ayres & Son, the sum of $2,123 01, which last note was then, in that settlement credited by $527, the sum of all the credits to which they were then entitled, including the $100 then paid to the said L. C. Wells for Nancy Wells, which reduced the said last note to $1,596 01, for which, and for the said individual note of G. C. Ayres, new notes were taken, and by him, the said L. C. Wells, were delivered to Mrs. Nancy Wells, together with the said $100, that day paid, and credited in that settlement. Although it is claimed by the defendants that it is to be *again* credited on the note in suit, and to be proved as such by the book of the debtor.

A witness testifies to seeing $200 paid to Mrs. Nancy Wells by George C. Ayres in March, 1882. This may be true, but as the witness does not say what it·was paid on, whether on his G. C. Ayres individual debt to Nancy Wells, or on the firm debt held by her, the presumption, sustained by the positive testimony of L. C. Wells, is that the settlement made 25th August, 1882, embraced all credits at and prior to that date; and it is against all legal presumption, that George C. Ayres, in making a settlement in August, 1882, would have omitted to reduce the debt due on his or the firm's old notes, by so considerable a credit as $200, for which he had no receipt, and no evidence but his own entry in his own book. There must be clearer proof of it, before defendants can be allowed to go behind the settlement after their creditor's death. The $200 cannot be credited · against the note in suit. Of the alleged payment of $400 in December, 1883, there is no proof whatever, though it may have been made on the individual note of G. C. Ayres, whose interest it was to apply it to his individual note.

As to the alleged payment of $500, the only evidence is the testimony of the witness B. B. Moseley, as set out in the bill of exceptions, that he was with George C. Ayres at Mrs. Well's house November 24th, 1883, when he paid her $500— $400 in cash and $100 in his, G. C. Ayres', individual check— not in the check of the firm, or of either firm. The presumption is, that this was an individual payment and applicable to his individual note, and, at all events, it was not applied to the firm's note now in suit, and no credit for it was endorsed on it.

It is pretended, that Mrs. Wells made G. C. Ayres a gift or present of his individual note for $1,085 12, and that he took up this note by gift and not by payment.

The presumption is strongly against the idea of a gift by a creditor to her debtor of his debt—especially where the amount is so large, and there are no ties of blood, and where the creditor is a widow, in need of money, and frequently calling for

it; and the debtor, on the other hand, is a prosperous business man. The pretence of a gift needs stronger proof than the mere loose statement by the witness that he saw Mrs. Wells hand *a* paper across the table to G. C. Ayres, and that on the road home said Ayres pulled out of his pocket a paper (which witness says was the same paper) and said, Aunt Mary made me a nice present. Witness says that he paid but little attention to it, and so far as he knows to the contrary, there may have been endorsed upon it as credits, the payments of $400 and $500 and the $200 paid March, 1882, which said payments would have just about paid off the individual note of G. C. Ayres for $1,085 83, with interest from January 1st, 1882, held by Mrs. Wells.

It is a suspicious circumstance that this $1,085 83 individual note was not produced to show that these payments claimed by the special plea in the suit upon the note of the firm as credits upon that note, were not endorsed upon it, as the probability is they were. He had it, and did not produce it.

There was no attempt to show, nor is there anything in the record to show, that these payments claimed as credits upon the firm note in suit were paid out of the funds of the firm, and therefore applicable only to the note of the firm sued on. The record shows that there was a motion to set the verdict aside and grant a new trial upon the ground that the verdict is against the law and the evidence; which motion was overruled by the court, and to which ruling of the court, the plaintiff objected and excepted.

The judgment of the court complained of is wholly erroneous, and must be reversed and annulled; and the case will be remanded to the circuit court for a new trial, with instructions to set the verdict aside, and to proceed in accordance with the opinion of this court.

JUDGMENT REVERSED.